IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSEPH CLARK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2003-cv-275-JPG |
| ) | |
| DARLENE VELTRI, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

**GILBERT, District Judge:**

This matter comes before the Court on Magistrate Judge Donald G. Wilkerson's Report and Recommendation (Doc. 12) recommending–based on that court's review of federal prisoner-petitioner Joseph Clark's 28 U.S.C. §2241 petition for habeas corpus (Doc. 1), the government's answer to the petition (Doc. 4), and Clark's reply to that answer (Doc. 6)–that this Court deny the relief Clark seeks in this case: reinstatement of 40 days' good-time credit and expungement of the administrative violation at issue here from his prison records.  Because Clark timely objected to the report (Doc. 15), this Court's review of the report is de novo, 28 U.S.C. §636(b)(1); FED. R. CIV. P. 72(b), as Clark's objection essentially goes to the whole thing.  Having carefully considered the relevant materials, this Court will REJECT the report and recommendation; grant Clark's petition; and order respondent Darlene Veltri to restore Clark with 40 days' good-time credit and expunge this violation from his prison records.

Although it 's not entirely clear from the record in this case, petitioner Joseph Clark is apparently serving 188 months in federal custody for being a felon in possession of a weapon, 18 U.S.C. §922(g)(1), and an armed career criminal to boot. 18 U.S.C. §922(e)(1). Other than the fact that he was convicted of illegally "possessing" something Clark's conviction has little to do with the issues presented in this case, as we'll see momentarily. Clark resides at the federal prison in Greenville, Illinois, and in late January 2002 correctional officer James Phillips conducted a routine shakedown of Clark's cell, which he shared with four other inmates. Given the fact that we're here today one would suspect that the search turned up something illegal; and rightly so, for two shanks were hidden behind a sink near a window in the washroom adjoining the cell. Bureau of Prisons Code 104 sensibly prohibits federal inmates from possessing sharpened items, 28 C.F.R. §541.13, Table 3, so Phillips issued Clark an incident report charging a violation of this regulation based on the found shanks. Phillips put it this way in his incident report:

> On the above date at the stated time, I conducted a routine cell search of Cell #B07-281U in H2-B. While searching the sinks in the bathroom, I found two homemade weapons hidden in the back of the one closest to the window. The cell was occupied by inmate Clark (#27774-044). I secured the cell after removing all inmates & forwarded the weapons along with this report to the Lieutenant's Office.

(Jan. 25, 2002 incident report, block 11). Clark denied the charge and in due course appeared before a hearing officer to challenge the allegation. Here's how the DHO summarized Clark's testimony:

> I didn't know [the items] were there.  I was in there when I first got here and moved out for two months and Mr. Neudeck moved me out of the 3-man cell to the 8-man cell and I had been in there for approximately two weeks.  I wish I knew how they got there, I would solve the problem.  My points have dropped and I want to go to a Low.  I haven't had any problems at all since I have been here.

(Feb. 7, 2002 hearing report, block III.B).  The only other evidence presented at the hearing was a picture of the shanks at issue.  No one besides Clark testified.  Thus, relying on Phillips's written statement, Clark's testimony, and the photographs just referenced, the DHO found Clark guilty, sanctioning him to the loss of 40 days' good-conduct credits.  Arguing that he never possessed the weapons, and therefore that the evidence was insufficient to sustain the DHO's finding, Clark appealed that finding to the Bureau of Prisons' regional and national directors.  Both affirmed.

Clark's argument all along has been that he couldn't have possessed the shanks because he never knew they were there in the first place.  But as even he must realize, that's a tough argument to win in this Court given the standard of review applicable to this claim.  Note that 28 U.S.C. §2241 is limited to redressing constitutional violations, but see *Henderson v. Carlson*, 812 F.2d 874, 879 (3d Cir. 1987), and *Superintendent, Mass. Corr. Inst. v. Hill* holds that "due process in this context requires only that there be some evidence to support the findings made in the disciplinary hearing."  472 U.S. 445, 457 (1985).  In other words, ours is not to examine the entire record at this point, nor should we independently assess witness credibility or otherwise weigh the evidence.  *Hill*, 472 U.S. at 455.  Our task is simply to ensure that the DHO's findings weren't unsupported

by the evidence or otherwise arbitrary. *Hill*, 472 U.S. at 457.

That said, this case presents a significant initial problem; just what *are* the findings necessary to sustain the violation alleged in this case? Under the heading "Prohibited Acts," Code 104 provides in its entirety: "Possession, manufacture, or introduction of a gun, firearm, weapon, sharpened instrument, knife, dangerous chemical, explosive or any ammunition." Thus, for one thing, finding that the objects involved in this case were "sharpened instruments" is one element necessary to sustain the violation, and in any event Clark doesn't argue that the shanks here didn't qualify as such. Indeed, that's presumably why pictures were submitted into evidence in the first place, and they clearly qualify as "some evidence" to support this finding. But what of "possession"? What exactly does "possession" mean? More specifically, are we talking "knowing" possession; "negligent" possession; or just plain old "possession," period? The answer to this question is important, because rather than identifying evidence suggesting that Clark knew the shank was in the washroom (i.e., "knowing" possession), the DHO rested his finding on the notion that "if no person claims responsibility, all inmates in the cell must be held responsible, for anything found in their area of responsibility (Cell, Work Area, or Person)." So as the DHO apparently saw things, the mere fact that a shank was found in Clark's cell was enough to hold Clark guilty of that offense regardless of whether he had any real connection to the item or not. In legal terms, we call that strict liability. Clark, for his part, assumes that at least some mental state is required to sustain the allegation. Here's his position on this

score: one, "the inmate has been held responsible for a sharpened instrument for which he had no knowledge, was not shown to be connected to him in any way [other than that it was in a washroom he shared], but was found by a trained specialist utilizing tools not available to inmates," suggesting to us a "knowing" mental state; and two, "[t]he inmate had no way of discovering the secreted contraband, yet is held responsible because he did not discover it," in turn suggesting "negligence."

It's true that "strict liability offenses are not unknown to the criminal law and do not invariably offend constitutional requirements," *United States v. United States Gypsum Co.*, 438 U.S. 422, 437 (1978), though under most circumstances it's generally presumed that the definition of a crime embraces some requirement of mens rea. *Morissette v. United States*, 342 U.S. 246 (1952). Notably, the criminal analogue to the administrative violation at issue here, 18 U.S.C. §1791(a)(2), requires the government to prove that a defendant "knowingly" or "intentionally" possessed the prohibited object. *United States v. Fox*, 845 F.2d 152, 156 (7th Cir. 1988). Closer to this case, courts generally understand possession to exist "when a tangible object is in the immediate possession or control of the party . . . [or] when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." *United States v. Garrett*, 903 F.2d 1105, 1110 (7th Cir. 1990). Thus, whether stated in terms of a "knowledge" mens rea or as a "metaphysical" concept necessarily requiring knowledge of the existence of the object, *United States v. Kitchen*, 57 F.3d 516, 521 (7th

Cir. 1995), these authorities taken together suggest that simply *being* in an area where an object is found without more is insufficient to constitute possession of the object absent an indication of legislative (or administrative) intent to the contrary. Compare *Hamilton v. O'Leary*, 976 F.2d 341, 345 (7th Cir. 1992) ("The Summary also states that the Adjustment Committee's decision was based on the ticket and the prison's constructive possession rule which holds Hamilton 'responsible for whatever is found in the cell.'"). No contrary indication exists in this case; and for what it's worth the Rule of Lenity also counsels in favor of the heightened requirement. Therefore, we'll construe this regulation accordingly.

    So viewed, the DHO's finding in this case cannot stand. The DHO rested his finding on the mere fact that the shank was found in Clark's cell, nothing more. But as we've said above, Clark shared that cell with four other roommates, and no nexus between himself and the shanks was ever established. See *United States v. Hernandez*, 13 F.3d 248, 252 (7th Cir. 1994). Granted, the "some" evidence standard is among the most liberal standards of review known to the law. And as such, we'd have had a different case entirely had Clark been a resident of the cell for much more than two weeks, for example, or perhaps if the weapon had been readily accessible to the point of suggesting to the DHO that Clark had to have known it was there and that his professed ignorance at the hearing was therefore insincere. Indeed, a finding that Clark had been lying would've been a credibility determination well-nigh unreviewable in this Court and, when combined with the fact that Clark lived in the

cell–even with four other roommates, probably sufficient to sustain the DHO's finding. But that's clearly not the decision we have in this case. And to the extent these considerations may have in fact contributed to the DHO's finding, but were left unarticulated, we cannot simply fill in the blanks for the DHO as perhaps we might do were we presented with a jury verdict, given that one requirement of due process in these situations is a written statement by the fact finder of the evidence presented *and* the reasons for his findings. See *Wolff v. McDonnell*, 418 U.S. 537, 557 (1974).

Thus, for the foregoing reasons the Magistrate's Report and Recommendation (Doc. 12) is **REJECTED** and Joseph Clark's 28 U.S.C. §2241 petition for a writ of habeas corpus (Doc. 21) is **GRANTED**. Respondent Darlene Veltri is **DIRECTED** to restore Clark's 40 days' good-time credit and expunge the administrative violation at issue in this case from his prison record.

**IT IS SO ORDERED.**

**Dated: July 25, 2005.**

                                        **/s/ J. Phil Gilbert**
                                        **J. PHIL GILBERT**
                                        **U.S. District Judge**